**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**BEAUMONT DIVISION**

| | | |
|---|---|---|
| RAJU MEGANATHAN *et al.* | § | |
| | § | |
| v. | § | **1:13-CV-497** |
| | § | |
| SIGNAL INTERNATIONAL L.L.C. *et al* | § | |

**REPORT AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE**

This case is assigned to the Honorable Marcia A. Crone, United States District Judge, and is referred to the undersigned United States Magistrate Judge for all pretrial matters pursuant to a Referral Order.  (Doc. No. 2.)  Pending before the undersigned is the "Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(2)" filed by Malvern C. Burnett, the Law Offices of Malvern C. Burnett, A.P.C., and Gulf Coast Immigration Law Center, L.L.C (hereinafter referred to interchangeably as "Burnett" and "the Burnett Defendants").  (Doc. No. 10.)  The undersigned has considered the pending motion and the corresponding response (Doc. No. 20).   The Burnett Defendants' motion should be denied because: 1) the court has personal jurisdiction over the Burnett Defendants because the RICO statute provides for nationwide service of process; and 2) the court has specific personal jurisdiction over the Burnett Defendants given the number of alleged tortious acts committed by the Defendants that injured the Plaintiffs within Texas.

## I.  Background

*A.  Procedural Background*

On March 7, 2008, twelve individuals who were allegedly trafficked into the United States filed a putative class action against the Defendants in the Eastern District of Louisiana asserting trafficking, RICO, civil rights, and state law contract and fraud claims.[1]   See David v. Signal Int'l,

---

1.  The Plaintiffs presumably still have FLSA claims pending in the Eastern District of Louisiana.   (Doc. No. 24, p. 6.)

LLC, Civ. A. No. 08-1220 (E.D. La.).   That Court denied class certification;[2] and, as a result of this ruling, the Plaintiffs in the instant action filed suit in this District, where they were allegedly subjected to deplorable working conditions at a Signal facility in Orange, Texas.[3]   (Doc. No. 1.) On August 7, 2013, the Plaintiffs filed their complaint in this court against the Burnett Defendants, Signal International, L.L.C., Signal International, Inc., Signal International Texas, G.P., Signal International Texas, L.P. (hereinafter collectively referred to as "Signal"), Michael Pol, Global Resources, Inc., Sachin Dewan and Dewan Consultants Pvt. Ltd.   (Id.)   Subsequently, the Burnett Defendants filed the instant motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(2).   (Doc. No. 10.)

B.   *Factual Background*

In the aftermath of Hurricane Katrina, approximately 590 men, including the Plaintiffs, were allegedly trafficked into the United States through the federal government's H-2B guest worker program to provide labor and services to the Signal Defendants.   (Doc. No. 1, p. 1.)   The Plaintiffs claim they were lured to work for Signal through the fraudulent promise of legal and permanent work-based immigration to the United States for themselves and their families.   (Id., p. 2.)   Subsequently, after coming to the United States, the Plaintiffs were allegedly subjected to forced labor and other serious abuses at Signal operations in Orange, Texas and Pascagoula, Mississippi.   (Id., p. 3.)   The Burnett Defendants consist of Malvern C. Burnett and his two corporations: Gulf Coast Immigration Law Center, L.L.C. and the Law Offices of Malvern C. Burnett, A.P.C.   The Plaintiffs accuse Burnett of conspiring with Signal and other Defendants to

---

2.   David v. Signal Int'l, LLC, Civ. A. No. 08-1220, 2012 U.S. Dist. LEXIS 114247, at *129 (E.D. La. Jan. 3, 2012).

3.   Maruthamuthu Mayavu is the only Plaintiff in this lawsuit who worked in Signal's Pascagoula, Mississippi facility as opposed to their Orange, Texas facility.   Curiously, the Defendants did not move to dismiss on that basis.

recruit Indian welders and pipefitters to fill anticipated H-2B guest worker jobs at Signal's operations with false promises of permanent residency in the United States for the workers and their families.   (Id.)

## II.  Jurisdiction

The Burnett Defendants move to dismiss the instant case under Federal Rule of Civil Procedure 12(b)(2), alleging that this court lacks personal jurisdiction over them.   (Doc. No. 10.) Rule 12(b)(2) requires a court to dismiss a claim if it does not have personal jurisdiction over the defendant.   Grynberg v. BP P.L.C., 855 F. Supp. 2d 625, 638 (S.D. Tex. 2012); see FED. R. CIV. P. 12(b)(2).   "When a court rules on a motion to dismiss for lack of personal jurisdiction without holding an evidentiary hearing, the party asserting jurisdiction is required to present facts sufficient to constitute a *prima facie* case of personal jurisdiction to satisfy its burden."   Duke Energy Int'l, L.L.C. v. Napoli, 748 F. Supp. 2d 656, 678 (S.D. Tex. 2010) (citing Central Freight Lines Inc. v. APA Transport Corp., 322 F.3d 376, 380 (5th Cir. 2003); Alpine View Co. v. Atlas Copco A.B., 205 F.3d 208, 214 (5th Cir. 2000)).   "[O]n a motion to dismiss for lack of jurisdiction, uncontroverted allegations in the plaintiff's complaint must be taken as true, and conflicts between the facts contained in the parties' affidavits must be resolved in the plaintiff's favor for purposes of determining whether a *prima facie* case for personal jurisdiction exists." Bullion v. Gillespie, 895 F.2d 213, 217 (5th Cir. 1990).

*A.  Nationwide Service of Process under the RICO Statute, 18 U.S.C. § 1965(b)*

In their complaint, the Plaintiffs allege RICO claims against all of the Defendants, including the Burnett Defendants.   (Doc. No. 1.)   A federal court obtains personal jurisdiction over a defendant in a suit based upon a federal statute if that statute provides for nationwide service of process and the defendant has had minimum contacts with the United States.   Busch v.

Buchman, Buchman & O'Brien, Law Firm, 11 F.3d 1255, 1258 (5th Cir. 1994).  The Burnett

Defendants have minimum contacts with the United States.   (See Doc. No. 10, Exh. 1, Affidavit

of Malvern Burnett.)   Thus, the next issue to be decided is whether the RICO statute provides

nationwide service of process.

Title 18 U.S.C. § 1965 provides, in pertinent part:

> (a) Any civil action or proceeding under this chapter against any
> person may be instituted in the district court of the United States for
> any district in which such person resides, is found, has an agent, or
> transacts his affairs.
> (b) In any action under section 1964 [the civil RICO remedies] of
> this chapter in any district court of the United States in which it is
> shown that the ends of justice require that other parties residing in
> any other district be brought before the court, the court may cause
> such parties to be summoned, and process for that purpose may be
> served in any judicial district of the United States by the marshal
> thereof.

While the Fifth Circuit has not yet ruled on this issue, it appears all of the district courts in

this Circuit have interpreted § 1965(b) to confer nationwide jurisdiction in a RICO action over

nonresident defendants if the plaintiff can establish personal jurisdiction over at least one

defendant under § 1965(a).   Allstate Ins. Co. v. Plambeck, No. 3-08-cv-0388-M, 2009 WL

347423, at *3 (N.D. Tex. Feb. 11, 2009) (citing Rolls–Royce Corp. v. Heros, Inc., 576 F. Supp. 2d

765, 778-79 (N.D. Tex. 2008); Oblio Telecom, Inc. v. Patel, No. 3–08–cv–0279–L, 2008 WL

4936488, at *4 (N.D. Tex. Nov. 18, 2008)); see also Hawkins v. Upjohn Co., 890 F. Supp. 601,

606 (E.D. Tex. 1994); Paolino v. Argyll Equities, L.L.C., 401 F. Supp. 2d 712, 719 (W.D. Tex.

2005); cf. Flores v. Koster, No. 3:11-cv-0726-M-BH, 2013 WL 4874117, at *4 (N.D. Tex. June

28, 2013).   Furthermore, the majority of circuit courts have determined that § 1965(b) confers

nationwide service of process in RICO cases.   See Allstate Ins. Co., 2009 WL 347423, at *3 n.2

(collecting cases).   Accordingly, the undersigned will follow the majority rule that § 1965(b) of

the RICO statute provides for nationwide service of process if the plaintiff can establish personal jurisdiction over at least one defendant under § 1965(a).   That is easily met here.   In the instant case, it is clear that Defendant Signal transacts its affairs in this forum as they have a facility in Orange, Texas.[4]

Having decided § 1965(b) provides nationwide service of process, the last inquiry is whether the "ends of justice require" the Burnett Defendants, who reside and conduct business in the Eastern District of Louisiana and Southern District of Mississippi, be brought before the court in the Eastern District of Texas.   See 18 U.S.C. § 1965(b) ("In any action under section 1964 of this chapter in any district court of the United States in which it is shown that the ends of justice require that other parties residing in any other district be brought before the court, the court may cause such parties to be summoned . . . .").   "[T]he 'ends of justice' is a flexible concept uniquely tailored to the facts of each case."   Cory v. Aztec Steel Building, Inc., 468 F.3d 1226, 1232 (10th Cir. 2006).   The Fifth Circuit has not implemented any legal test as to what exact set of facts meet "the ends of justice" requirement.   See Hewlett-Packard Co. v. Byd:Sign, Inc., No. 6:05-cv-456, 2006 WL 2822151, at *9 (E.D. Tex. Sept. 28, 2006).   While courts have used somewhat differing tests, the two considerations that are used most frequently are 1) whether no other district court

---

4. In the conclusion of Burnett's motion to dismiss, for the first time, Burnett states "he was not served pursuant to the nationwide service of process provisions of RICO." (Doc. No. 10, p. 7.) However, Burnett does not further explain this assertion nor provide any legal support for it.  While Burnett does not specifically state it in his motion, presumably the Plaintiffs effected service on Burnett by utilizing the waiver provisions of Rule 4 of the Federal Rules of Civil Procedure.  See Joseph et al. v. Signal et al., 1:13-cv-324 (Doc. No. 50, p. 2).  While it is true that a waiver of service does not waive an objection to personal jurisdiction, see Fed. R. Civ. P. 4(d)(5), it certainly does not serve to eliminate a party's ability to obtain personal jurisdiction over a defendant through a nationwide service of process provision.

Burnett also argues that even if § 1965(b) provides for nationwide service of process, "the requirements of the constitution and due process must still be fulfilled." (Doc. No. 10, p. 2.) This argument is somewhat irrelevant. Due process concerns are subsumed when a federal court exercises personal jurisdiction over a defendant in a suit based upon a federal statute providing for nationwide service of process and the defendant has minimum contacts with the United States. Busch, 11 F.3d at 1258.

would have personal jurisdiction over *all* of the alleged RICO conspirators,[5] and 2) judicial economy.[6]

The "ends of justice" require the Burnett Defendants to answer in this forum because numerous defendants reside in different states, and there is likely no alternative forum in which jurisdiction would be proper as to all defendants.[7]   Also, for reasons of judicial economy, the "ends of justice" should also require the Burnett Defendants to litigate this suit in Texas.   There are currently four plaintiffs in this case and over eighty in the four companion cases in which the Burnett Defendants are parties.[8]   Most of these same plaintiffs already have pending FLSA claims in the Eastern District of Louisiana stemming from the same allegations.   (Doc. No. 24, p. 6.) Approximately ninety plaintiffs will be trying this case here in Texas against the defendants that have not sought or may be denied their request to transfer venue.   Therefore, if the Burnett Defendants were dismissed from this case, most of the plaintiffs in this and the companion cases would be litigating their FLSA claims against Signal in Louisiana; all of the plaintiffs would be litigating their RICO, federal law and state law claims against the remaining defendants here; and then potentially those same RICO, federal law and state law claims against only the Burnett Defendants would be litigated in an entirely different forum.[9]   That would be contrary to

---

5.   Butcher's Union Local No. 498 v. SDC Investment, Inc., 788 F.2d 535, 539 (9th Cir. 1986).

6.   Farmers Bank of State of Del. v. Bell Mortg. Corp., 577 F. Supp. 34, 35 (D.C. Del. 1978).

7.   The various Signal Defendants have operations in Texas, Mississippi and Alabama and are organized under the laws of Delaware; Defendant Michael Pol is a Mississippi resident; Defendant Global Resources, Inc. is organized under the laws of Mississippi; Defendant Sachin Dewan is a resident of India while Defendant Dewan Consultants is organized under the laws of India; Defendant Malvern Burnett is a Louisiana resident who practices law in Louisiana and Mississippi; and Defendants Law Office of Malvern Burnett, A.P.C. and Gulf Coast Immigration Center are corporations organized under the laws of Louisiana.   The Plaintiffs generally aver that most, if not all, of the Defendants have "substantial business contacts in Texas."   (Doc. No. 1.)

8.   See 1:13-cv-323; 1:13-cv-324; 1:13-cv-499; 1:13-cv-498.

9.   The Burnett Defendants do not say which forum they would be subject to personal jurisdiction.

Congress' intent for the "ends of justice" provision which enables plaintiffs to bring all members of a nationwide RICO conspiracy before a court in a single trial.   Butcher's Union, 788 F.2d 535, 539.   The undersigned also notes that it would be impractical to require the four Plaintiffs in this case and roughly ninety plaintiffs in the companion cases to travel to a different forum all for the sake of the Burnett Defendants, who consist of a single attorney and two companies Burnett describes as "inactive" located in a contiguous state.   (Doc. No. 10, Exh. 1, p. 3.)

The Burnett Defendants argue that given the conclusory allegations against them in the complaint, the "ends of justice" do not require they be brought before this court.   (Doc. No. 10, p. 5-6.)   They argue the Plaintiffs have failed to plead enough facts in their complaint to show the Burnett Defendants engaged in a conspiracy or a scheme to defraud or commit illegal acts subjecting them to the personal jurisdiction of this court.   (Id.)   These are not relevant considerations when deciding whether "the ends of justice" require the Burnett Defendants to be brought to Texas.   Questions of whether the complaint sufficiently pleads violations of the RICO statute should not be raised in a motion under Rule 12(b)(2) challenging personal jurisdiction. See Allstate Ins. Co., 2009 WL 347423, at *4.   In fact, it is already the subject of another motion to dismiss filed by the Burnett Defendants.   (Doc. No. 11.)

*B.   The Burnett Defendants are also subject to specific personal jurisdiction in this District*

Although this court has personal jurisdiction over the Burnett Defendants due to the nationwide service provisions of the RICO statute, this court also has specific personal jurisdiction over the Burnett Defendants.   Absent a statute that permits nationwide service of process, when a suit is based on a federal statute, the court looks to the long-arm statute of the state in which it sits to determine whether a defendant is subject to personal jurisdiction.   Omni Capital Intern., Ltd. Rudolf Wolff & Co., Ltd., 484 U.S. 97, 105 (1987).   The Texas long-arm statute confers

jurisdiction to the limits of the federal constitution.   <u>Companion Prop. & Cas. Ins. Co. v. Palermo</u>, 723 F.3d 557, 559 (5th Cir. 2013).   Therefore, the undersigned's focus is whether the exercise of personal jurisdiction offends or satisfies constitutional requirements of due process.

In order to satisfy due process, the Burnett Defendants must have "certain minimum contacts with [Texas] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice."   <u>Parker v. Pro W. Contractors, L.L.C.</u>, No. 13-30142, 2013 WL 3534082, at *1 (5th Cir. July 15, 2013) (citing <u>Int'l Shoe Co. v. State of Wash.</u>, 326 U.S. 310, 316 (1945)).   "The minimum contacts requirement is satisfied by either: (1) contacts that give rise to general personal jurisdiction or (2) contacts that give rise to specific personal jurisdiction."   <u>Id.</u> (citing <u>Wilson v. Belin</u>, 20 F.3d 644, 647 (5th Cir. 1994)).   Because the Plaintiffs do not argue minimum contacts are satisfied through general personal jurisdiction, the undersigned will focus only on whether the Burnett Defendants have sufficient contacts that give rise to specific personal jurisdiction.

"Specific jurisdiction is proper where the defendant has 'purposefully directed his activities at residents of the forum, and the litigation results from alleged injuries that arise out of or relate to those activities.'"   <u>Parker</u>, 2013 WL 3534082, at *1 (5th Cir. July 15, 2013) (citing <u>Burger King Corp. v. Rudzewicz</u>, 471 U.S. 462, 474 (1985)); <u>see also</u> <u>Electrosource, Inc. v. Horizon Battery Techs. Ltd.</u>, 176 F.3d 867, 871 (5th Cir. 1999) (litigation must arise out of or relate to activities purposefully directed at residents of the forum).   "The constitutional requirement for specific jurisdiction is that the defendant has 'minimum contacts' with the forum state such that imposing a judgment would not 'offend traditional notions of fair play and substantial justice.'"   <u>Stroman Realty, Inc. v. Wercinski</u>, 513 F.3d 476, 484 (5th Cir. 2008) (quoting <u>Int'l Shoe Co. v. State of Wash., Office of Unemployment Comp. & Placement</u>, 326 U.S.

310, 316 (1945)).

The complaint (Doc. No. 1) raises these allegations against the Burnett Defendants:

At all relevant times, the Burnett Defendants acted as agents of Defendant Signal for the purpose of recruiting, obtaining, contracting with, transporting and/or providing Plaintiffs for labor or services in Signal's Orange, Texas, and Pascagoula, Mississippi, facilities.   During this process, Burnett represented to the Plaintiffs that 1) Defendant Signal was a stable and reputable U.S. company offering lawful and ample employment opportunities; 2) working under an H-2B visa for Signal was not inconsistent with applying for permanent immigration status sponsored by Signal; and 3) Signal would obtain work-authorized green cards for the Plaintiffs, enabling them to permanently and legally reside in the United States with their families.   In actuality, the Defendants lacked the intent to diligently pursue the Plaintiffs' green card applications. They also lacked any basis whatsoever for representing, inter alia, that 1) the companies and/or entities that purportedly were sponsoring Plaintiffs' applications were financially solvent and had reliable and stable employment opportunities to provide the Plaintiffs; 2) green card applications sponsored by those companies would be valid and *bona fide* under U.S. immigration law; and 3) any applications were likely to be successfully completed and approved within the promised timelines.

All of the Plaintiffs undertook considerable economic, social, familial, and personal sacrifices to obtain the funds necessary to cover the fees paid to all of the Defendants involved in the recruitment process, including Burnett.   Since first contracting with the Defendants in India, the Plaintiffs have yet to receive the green cards that the Defendants promised them.   Despite clear contractual provisions requiring them to do so, Burnett has refused to refund any of the Plaintiffs' money, which was paid to them for the express purpose of processing and obtaining green cards and visas for the Plaintiffs.

In late May and early June of 2006, the Burnett Defendants filed with the Texas Workforce Commission the completed forms ETA 750 and attachments seeking permission to import and hire 590 foreign guest workers under the auspices of 8 U.S.C. § 1101(a)(15)(H)(ii)(b), attendant regulations 8 C.F.R. § 214.2(h)(6) and 20 C.F.R. § 655.3 and associated administrative letters and/or guidance (commonly known as "the H-2B guest worker program") on behalf of Signal.   Burnett knew Signal projected the labor need that it sought to fill with foreign workers to be for at least two to three years.   However, in these applications, they only stated that they would employ the workers from October 1, 2006 to July 31,

2007.  Furthermore, they stated that "the temporary workers will work for the length of the prescribed dates of need, will be paid in accordance with the prevailing wage and will return to their home country at the end of employment."  The Plaintiffs entered the United States on H-2B guest worker visas, issued by the U.S. Government on the basis of false statements in late 2006 and early 2007 for the purposes of working for Defendant Signal at its Pascagoula, Mississippi, and Orange, Texas, facilities.

        In the isolated and guarded atmosphere of the labor camps, grappling with the crushing debts they had incurred to come to the United States, and fearful of the perceived dangers that existed outside of their fenced-in housing site, the Plaintiffs reasonably felt forced to live in the bunkhouses and continue working for Signal, despite terrible living and working conditions.  Plaintiffs' continuing dependence upon Signal for their present and future immigration status and their continuing high levels of indebtedness, along with the prison-like living conditions that they had been exposed to, reasonably caused the Plaintiffs to fear serious harm and/or abuse of the legal process if they were to leave Signal's employ.  Under these circumstances, Plaintiffs reasonably felt like they had no choice but to continue working for Signal under these conditions.

        In sum, Defendants, individually and jointly, conspired and schemed to target Plaintiffs as Indian laborers, knowing that they would be enticed by good pay and false promises of permanent residency, to lure them into the United States. Furthermore, each Defendant, individually and through a collaborative enterprise premised upon fraud, mistreated Plaintiffs and deprived them of any benefit of a fair bargain.

        First, the Plaintiffs have clearly satisfied the minimum contacts requirement by alleging the Burnett Defendants supplied false information to the Texas Workforce Commission in the documents Burnett filed to gain permission for the Plaintiffs to travel to the United States and to work for Signal.  Burnett also admits visiting Signal's Texas facility once or possibly twice to consult with Signal's plant manager about the overall status and employment of "the non-immigrant workers who had been initially deployed to Signal's facility in Texas."  (Doc. No. 10, Exh. 1.)  Furthermore, the Plaintiffs have also satisfied the minimum contacts requirement by alleging the Burnett Defendants committed acts outside of Texas that caused tortious injuries

within Texas.   The Fifth Circuit has held that sufficient minimum contacts are established "[w]hen a nonresident defendant commits a tort within the state, *or an act outside the state that causes tortious injury within the state*."   Guidry v. United States Tobacco Co., 188 F.3d 619, 628 (5th Cir. 1999) (collecting cases).   "Even an act done outside the state that has consequences or effects within the state will suffice as a basis for jurisdiction in a suit arising from those consequences if the effects are seriously harmful and were intended or highly likely to follow from the nonresident defendant's conduct."   Id. (collecting cases).   An individual injured in Texas "need not go to [another jurisdiction] to seek redress from persons who, though remaining in other states, intentionally, knowingly and recklessly caused severe physical, emotional and economic injuries to the plaintiffs and others" in Texas.   Id. at 630.   Taking the allegations in the Plaintiffs' complaint as true, and resolving all factual conflicts in their favor, the court finds the Plaintiffs have established the Burnett Defendants have sufficient minimum contacts with Texas because the alleged tortious acts committed by the Burnett Defendants, even if most were committed outside of Texas, caused tortious injuries within Texas.   The Burnett Defendants, who allegedly conspired with Signal to lure the Plaintiffs to Orange, Texas with false promises, cannot credibly argue that they could not reasonably have anticipated being sued in this District.

Finally, it will not "offend traditional notions of fair play and substantial justice" for this court to exercise personal jurisdiction over the Burnett Defendants.   The Fifth Circuit has used the following test to assess the reasonableness of a court's exercise of personal jurisdiction: "(1) the burden upon the nonresident defendant to litigate in that forum; (2) the forum state's interests in the matter; (3) the plaintiff's interest in securing relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and (5) the several states' shared interest in furthering substantive social policies."   Stroman Realty, Inc. v. Wercinski, 513 F.3d

476, 487 (5th Cir. 2008) (citing <u>Asahi Metal Industry Co. v. Superior Court</u>, 480 U.S. 102, 113 (1987)).   First, the Burnett Defendants will not face a large burden in litigating the instant case in this District, because the Burnett Defendants, who consist of a single attorney and two "inactive" companies, are located in Louisiana, which is contiguous to Texas.   Second, the forum state, Texas, does have an interest in the matter because the Plaintiffs were allegedly injured while working at Signal's Orange, Texas facility.   Third, keeping the Burnett Defendants claims in this District will provide the most efficient resolution of this case.   Notwithstanding their status as putative class members, the Plaintiffs have already moved their case once from a different federal district court after their motion for class certification was denied.   <u>David v. Signal Int'l, LLC</u>, Civ. A. No. 08-1220, 2012 U.S. Dist. LEXIS 114247, at *129 (E.D. La. Jan. 3, 2012).   The most expeditious option at this point would be to continue this case in this District.   Finally, the Burnett Defendants have not pointed out any clashes between the substantive social policies of Texas and any other potential forum state in regards to this case.   There is no reason to believe that the State of Texas and the other potential forum state have different levels of interest in or conflicting views on the social issues pervading this case.   Taking these factors into consideration, the undersigned finds that traditional notions of fair play and substantial justice will not be offended by exercising personal jurisdiction over the Burnett Defendants.

In summary, the undersigned finds the Plaintiffs have presented sufficient facts to establish a *prima facie* case of personal jurisdiction over the Defendants because the RICO statute provides for nationwide service of process.   In the alternative, the undersigned also finds the Plaintiffs have established a *prima facie* case that this court has personal jurisdiction over the Burnett Defendants by showing 1) the Burnett Defendants have sufficient minimum contacts with Texas; and 2) it will not offend traditional notions of fair play and substantial justice for this court to exercise personal

jurisdiction over the Burnett Defendants.

## IV.   Recommendation

For the reasons stated above, the "Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(2) of Malvern C. Burnett, the Law Offices of Malvern C. Burnett, A.P.C., and Gulf Coast Immigration Law Center, L.L.C, and Memorandum in Support" (Doc. No. 10) should be **DENIED**.

## V.   Objections

Pursuant to 28 U.S.C. § 636(b)(1)(c) (Supp. IV 2011), each party to this action has the right to file objections to this report and recommendation.   Objections to this report must (1) be in writing, (2) specifically identify those findings or recommendations to which the party objects, and (3) be served and filed within fourteen (14) days after being served with a copy of this report.   See 28 U.S.C. § 636(b)(1)(c); Fed R. Civ. P. 72(b)(2).   A party who objects to this report is entitled to a *de novo* determination by the United States District Judge of those proposed findings and recommendations to which a specific objection is timely made.   See 28 U.S.C. § 636(b)(1)(c); Fed R. Civ. P. 72(b)(3).

A party's failure to file specific, written objections to the proposed findings of fact and conclusions of law contained in this report, within fourteen (14) days of being served with a copy of this report, bars that party from: (1) entitlement to de novo review by the United States District Judge of the findings of fact and conclusions of law, see Rodriguez v. Bowen, 857 F.2d 275, 276–77 (5th Cir. 1988), and (2) appellate review, except on grounds of plain error, of any such findings

of fact and conclusions of law accepted by the United States District Judge, see Douglass v. United

Serv. Auto. Ass'n., 79 F.3d 1415, 1428–29 (5th Cir. 1996).

SIGNED this 2nd day of July, 2014.

_____
Zack Hawthorn
United States Magistrate Judge