**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
BEAUMONT DIVISION**

| | | |
|---|---|---|
| **RAJU MEGANATHAN** *et al.* | § | |
| | § | |
| v. | § | 1:13-CV-497 |
| | § | |
| **SIGNAL INTERNATIONAL L.L.C.** *et al* | § | |

**REPORT AND RECOMMENDATION DENYING DEFENDANT SIGNAL'S MOTION
TO DISMISS (DOC. NO. 16)**

This case is assigned to the Honorable Marcia Crone, United States District Judge, and is referred to the undersigned United States magistrate judge to conduct all pretrial proceedings. (Doc. No. 2.) Before the undersigned magistrate judge is the "Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6)" (Doc. No. 16) filed by Defendants Signal International, L.L.C., Signal International, Inc., Signal International Texas, G.P., and Signal International Texas, L.P. (hereinafter collectively referred to as "Signal"). Because the Plaintiffs have pleaded enough factual content to draw the reasonable inference that the alleged pendent state law claims occurred in Texas Signal's Motion to Dismiss (Doc. No. 16) should be denied.

**I. Background**

*A. Procedural Background*

On March 7, 2008, twelve individuals who were allegedly trafficked into the United States filed a putative class action against the Defendants in the Eastern District of Louisiana asserting trafficking, RICO, civil rights, and state law contract and fraud claims. See David v. Signal Int'l, LLC, Civ. A. No. 08-1220 (E.D. La.). That Court denied class certification;[1] and, as a result of this ruling, the Plaintiffs in the instant action filed suit in this District, where they were

---

[1] David v. Signal Int'l, LLC, Civ. A. No. 08-1220, 2012 U.S. Dist. LEXIS 114247, at *129 (E.D. La. Jan. 3, 2012).

1

allegedly subjected to deplorable working conditions at a Signal facility in Orange, Texas.[2] (Doc. No. 1.)  On August 7, 2013, the Plaintiffs filed their complaint in this court against the Signal Defendants, Malvern C. Burnett, Gulf Coast Immigration Law Center, L.L.C., Law Offices of Malvern C. Burnett, A.P.C., Michael Pol, Global Resources, Inc., Sachin Dewan and Dewan Consultants Pvt. Ltd.  (Id.)

*B. Factual Background*

In the aftermath of Hurricane Katrina, approximately 590 men, including the Plaintiffs, were allegedly trafficked into the United States through the federal government's H-2B guest worker program to provide labor and services to the Signal Defendants.  (Doc. No. 1, p. 1.)  The Plaintiffs claim they were lured to work for Signal through the fraudulent promise of legal and permanent work-based immigration to the United States for themselves and their families.  (Id., p. 2.)  Subsequently, after coming to the United States, the Plaintiffs were allegedly subjected to forced labor and other serious abuses at Signal operations in Orange, Texas and Pascagoula, Mississippi.  (Id., p. 3.)

## II. Jurisdiction

The Plaintiffs seek recovery pursuant to several federal statutes.  For actions brought under these statutory provisions, the court has subject-matter jurisdiction predicated upon federal question jurisdiction.  See 28 U.S.C. § 1331; 29 U.S.C. § 216(b).  For the state law causes of action, the court has subject-matter jurisdiction predicated upon supplemental jurisdiction.  See 28 U.S.C. § 1367(a).  Venue is proper because the events giving rise to the above claims occurred within the confines of this District.  See 28 U.S.C. § 1391.

---

[2].  Maruthamuthu Mayavu is the only Plaintiff in this lawsuit who worked in Signal's Pascagoula, Mississippi facility as opposed to their Orange, Texas facility.  The Defendants did not move to dismiss on that basis.

### III.  Rule 12(b)(6) Standard

Rule 12(b)(6) of the Federal Rules of Civil Procedure authorizes dismissal of a complaint that fails to state a claim upon which relief can be granted.  FED. R. CIV. P. 12(b)(6).  A Rule 12(b)(6) motion to dismiss "is viewed with disfavor and is rarely granted."  Harrington v. State Farm Fire & Cas. Co., 563 F.3d 141, 147 (5th Cir. 2009).  When a court analyzes a Rule 12(b)(6) motion, it "accepts 'all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff.'"  In re Katrina Beaches Litig., 495 F.3d 191, 205 (5th Cir. 2007) (quoting Martin K. Eby Constr. Co. v. Dallas Area Rapid Transit, 369 F.3d 464, 467 (5th Cir. 2004)).  A court should grant such a motion only when the complaint fails to contain "enough facts to state a claim to relief that is plausible on its face."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).  A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  Id.

### IV.  Analysis

Signal moves to dismiss the Plaintiffs' pendent state law claims of fraud, negligent misrepresentation, and breach of contract pursuant to Federal Rule of Civil Procedure 12(b)(6).  (Doc. No. 16, p. 1.)  Signal argues the "state law claims are implausible because the Complaint alleges that the facts from which they originate occurred abroad;" and, therefore, "the contention that these claims are governed by state law is dubious."  (Id.)  In addition, although not entirely clear, Signal also seems to contend that the complaint should be dismissed because the Plaintiffs failed to meaningfully engage in a choice-of-law analysis in order to determine which, if any, state's law applies.  (Id., p. 9.)

The Plaintiffs respond that their complaint adequately alleges facts that their state law claims occurred in Texas and that Texas law applies to their claims. (Doc. No. 23.) Specifically, the Plaintiffs argue the complaint makes clear that the tortious actions originated, were performed, and continued to occur in Texas, specifically at the Texas Labor Camp located in Orange, Texas. (Id., p. 5.) The Plaintiffs allege that while recruiters working on Signal's behalf initially lured and defrauded the Plaintiffs abroad, Signal ratified the recruiters' actions by continuing to defraud the Plaintiffs upon their arrival in Texas. (Id.) Lastly, the Plaintiffs argue that a fact intensive choice of law analysis is premature given the sufficient facts that plausibly support the events centered around the Texas Labor Camp. (Id., p. 4.)

1. State Law Claims that are "Extraterritorial in Nature"

Signal's argument that the complaint should be dismissed because the claims in question are "predicated on representations, statements and communications that took place in India" is without merit. (Doc. No. Id, p. 1.) The complaint is replete with allegations that Signal committed the state law torts in Texas. The following is a summary of the Plaintiffs' complaint (Doc. No. 1):

> Defendant Dewan Consultants, Defendant Signal, Defendant Pol and Defendant Burnett induced Plaintiffs to enter into employment agreements by falsely promising to help Plaintiffs obtain green cards. In actuality, the Defendants lacked the intent to diligently pursue the Plaintiffs' green card applications. They also lacked any basis whatsoever for representing, inter alia, that 1) the companies and/or entities that purportedly were sponsoring Plaintiffs' applications were financially solvent and had reliable and stable employment opportunities to provide the Plaintiffs; 2) green card applications sponsored by those companies would be valid and *bona fide* under U.S. immigration law; and 3) any applications were likely to be successfully completed and approved within the promised timelines.
> *Once at the Texas Labor Camp*, Signal ratified the actions of the recruiters, breached its obligations and defrauded the Plaintiffs regarding their immigration status. Defendant Signal

4

subjected Plaintiffs to skills testing and re-testing and persistently threatened Plaintiffs with on-the-job discipline, layoffs, and periods without work and pay. Plaintiffs also were exposed to a work environment in which they were forced to endure a lack of safety precautions, unfavorable job assignments, evaluation processes, and other adverse employment actions to which non-Indian and U.S. citizen workers were not similarly subjected. Furthermore, at various times relevant to Plaintiffs' claims, Defendant Signal refused to confirm whether valid H-2B visa extensions had, in fact, been obtained for Plaintiffs. This coerced Plaintiffs to continue working for Signal in the hope that Signal would finally resolve their uncertain immigration statuses. On multiple occasions, Plaintiffs asked the Orange camp manager, who was known as "Ravi," about the statuses of their green cards. Ravi, an agent of Defendant Signal, always told Plaintiffs that they had to wait without giving them any further updates or information. Since first contracting with the Defendants in India, the Plaintiffs have yet to receive the green cards that the Defendants promised them. Despite clear contractual provisions requiring them to do so, Defendant Dewan Consultants, Defendant Pol, Defendant Burnett and Defendant Signal have refused to refund any of the Plaintiffs' money, which was paid to Defendants for the express purpose of processing and obtaining green cards and visas for Plaintiffs, as Defendants had promised.

In the RICO fraud chart attached to their complaint as Exhibit 1, the Plaintiffs also allege the following occurred after the Plaintiffs arrived in the United States:

> Defendant Signal told Plaintiff Meganathan and his co-workers that their visas and green cards were being processed during an in-person meeting at Signal's Texas facility. Subsequently, Signal told Meganathan that all of the workers were going to be evaluated and scored and that not everyone would be receiving visa extensions when their visas expired. The scoring was not explained, but only workers who scored higher than "six" would receive an extension.
> Defendant Signal informed Plaintiff Narayanasamy that it wished to extend his H-2B visa through May 31, 2008, and that it had authorized Defendant Malvern C. Burnett to initiate the process. After Plaintiff Narayanasamy's visa expired, he inquired as to actions that were being taken to secure his legal immigration status. Again, Defendant Signal assured Narayanasamy that his visa situation would be addressed. Narayanasamy never received any notification that he had received his green card or that his H-2B visa was renewed.

5

>	At periodic Signal camp meetings, Defendant Malvern C. Burnett told Plaintiff Mayavu and his co-workers repeatedly not to worry about their green cards.  Defendant Burnett also represented that he was applying for H-2B visa extensions for Plaintiff Mayavu and for others.  Subsequently, Plaintiff Mayavu and his co-workers inquired about extensions to their soon to expire H-2B visas.  Defendant Signal and Defendant Burnett informed them that they were still on track to receive extensions.
>	On several occasions in 2007 Plaintiff Ramasamy inquired about his green card status to Defendant Signal.  Defendant Signal repeatedly told Plaintiff Ramasamy that the situation would be addressed.  After Plaintiff Ramasamy's visa was allowed to expire, he inquired about the action being undertaken to secure his legal immigration status. Defendant Signal assured Ramasamy the situation would be addressed.

When deciding a 12(b)(6) motion to dismiss, the court must consider these facts as true. In re Katrina Beaches Litig., 495 F.3d at 205.  From these allegations, the Plaintiffs have clearly pleaded enough factual content to draw the reasonable inference that the alleged pendent state law claims of fraud, negligent misrepresentation, and breach of contract occurred in Texas.[3] Iqbal, 556 U.S. 662 at 678.   Even if the complaint alleges Signal's actions and the Plaintiffs' injuries occurred in Texas *and* India, Signal has not cited to any persuasive authority that this subjects the Plaintiffs' entire complaint to a 12(b)(6) dismissal.  In fact, district courts have the power to exercise supplemental jurisdiction over foreign law claims that form part of the same case or controversy.  In re BP p.l.c. Sec. Litig., 843 F. Supp. 2d 712, 799 (S.D. Tex. 2012) (citing 28 U.S.C. § 1367(c)).

2.  Choice of Law Analysis

Next, Signal argues the complaint is defective because it does not address the factors that would convince the court that Texas state law applies through a choice of law analysis. (Id.)  A

---

[3]. Signal briefly mentions that the complaint likely alleges the Plaintiffs incurred their damages in India, which "militates in favor of the conclusion that the applicable law is not state law." (Doc. No. 16, p. 23.)  However, as detailed in the complaint, the Plaintiffs not only suffered damages in India, but also Texas.  Signal allegedly continued to mislead, defraud and breach their contractual duties to the Plaintiffs once they were in Texas. (Doc. No. 1.)

court has discretion to exercise jurisdiction over state-law claims when federal question jurisdiction is proper and the state-law claims derive from a common nucleus of operative facts. Arena v. Graybar Elec. Co., Inc., 669 F.3d 214, 221 (5th Cir. 2012); 28 U.S.C. § 1367. Federal courts apply the forum state's conflict-of-law rules to determine what law governs the state-law claims. Bailey v. Shell Western E&P, Inc., 609 F.3d 710, 722 (5th Cir. 2010), citing Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 496 (1941). Texas courts first determine whether there is a conflict between Texas law and another potentially applicable law. Id. (citation omitted.) If there is no such conflict, a choice-of-law analysis is unnecessary. Id. (citing SAVA gumarska in kemijska industria d.d. v. Advanced Polymer Sciences, Inc., 128 S.W.3d 304, 314 (Tex. App.—Dallas 2004, no pet.)). But, where there is a conflict of laws, Texas follows the "most significant relationship" test of the Restatement (Second) of Conflict of Laws. Id. (citing Minn. Mining & Mfg. Co. v. Nishika Ltd., 953 S.W.2d 733, 735 (Tex. 1997)).

Signal does not dispute the court has proper federal question jurisdiction over the pendent state-law claims. Signal argues the complaint is subject to dismissal because it does not explain why Texas law applies over Indian law. (Doc. No. 16, p. 8-9.) Signal does not cite, and the undersigned cannot find, any binding Fifth Circuit authority for a 12(b)(6) dismissal because the complaint fails to *plead* the particular state's law at issue for the pendent state law claims. Nevertheless, Signal has not shown there is even a conflict of laws between Texas and Indian law.[4] Without such a showing, a choice-of-law analysis is unnecessary. Even if a choice-of-law

---

4. Signal appears to argue that this court should dismiss the instant case because of the "foreign nature" of the claims. However, none of the cases cited by Signal are applicable to the instant case in which Signal allegedly committed torts within Texas that injured the Plaintiffs within Texas. See e.g. Boureslan v. Aramco, Arabian Am. Oil Co., 892 F.2d 1271 (5th Cir. 1990) (An American citizen brought a Title VII suit, alleging that *while he was working in Saudi Arabia* the American corporation which employed him discriminated against him because of his race, religion and national origin.); Coca-Cola Co. v. Harmar Bottling Co., 218 S.W.3d 671, 680-81 (Tex. 2006) ("It is an especially sensitive matter for a jurisdiction to extend its laws governing economic competition *beyond its borders*."); E.E.O.C. v. Arabian Am. Oil Co., 499 U.S. 244 (1991) (A United States citizen brought a Title VII action against a United States employer, alleging that *while he was working abroad*, the employer discriminated

7

analysis were required, there is no authority for dismissing a complaint under 12(b)(6) for failing to analyze *in the complaint* which state law controls under the "most significant relationship" test promulgated in the Restatement (Second) of Conflict of Laws. In any event, Signal's choice-of-law argument is without merit. As discussed previously, the Plaintiffs have pled sufficient facts to draw the reasonable inference that Signal's alleged misconduct occurred in Texas, thereby invoking Texas law to govern the state causes of action.

## V. Recommendation

For the reasons stated above, Signal's "Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6)" (Doc. No. 16) should be denied.

## VI. Objections

Pursuant to 28 U.S.C. § 636(b)(1)(c) (Supp. IV 2011), each party to this action has the right to file objections to this report and recommendation. Objections to this report must (1) be in writing, (2) specifically identify those findings or recommendations to which the party objects, and (3) be served and filed within fourteen (14) days after being served with a copy of this report. See 28 U.S.C. § 636(b)(1)(c); Fed R. Civ. P. 72(b)(2). A party who objects to this report is entitled to a de novo determination by the United States District Judge of those proposed findings and recommendations to which a specific objection is timely made. See 28 U.S.C. § 636(b)(1)(c); Fed R. Civ. P. 72(b)(3).

A party's failure to file specific, written objections to the proposed findings of fact and conclusions of law contained in this report, within fourteen (14) days of being served with a copy of this report, bars that party from: (1) entitlement to de novo review by the United States District Judge of the findings of fact and conclusions of law, see Rodriguez v. Bowen, 857 F.2d 275, 276–77 (5th Cir. 1988), and (2) appellate review, except on grounds of plain error, of any

---

against him because of his race, religion, and national origin.).

such findings of fact and conclusions of law accepted by the United States District Judge, see Douglass v. United Servs. Auto. Ass'n, 79 F.3d 1415, 1428–29 (5th Cir. 1996).

SIGNED this 29th day of July, 2014.

_____
Zack Hawthorn
United States Magistrate Judge