**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
BEAUMONT DIVISION**

| | | |
|---|---|---|
| **RAJU MEGANATHAN** *et al.* § | | |
| § | | |
| v. § | **1:13-CV-497** | |
| § | | |
| **SIGNAL INTERNATIONAL L.L.C.** *et al* § | | |

**REPORT AND RECOMMENDATION DENYING THE BURNETT DEFENDANTS'
MOTION TO DISMISS (DOC. NO. 11)**

This case is assigned to the Honorable Marcia A. Crone, United States District Judge, and is referred to the undersigned United States Magistrate Judge for all pretrial matters pursuant to a Referral Order. (Doc. No. 2.) Before the undersigned is a "Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6)" filed by Malvern C. Burnett, the Law Offices of Malvern C. Burnett, A.P.C., and Gulf Coast Immigration Law Center, L.L.C (hereinafter referred to interchangeably as "Burnett" and "the Burnett Defendants"). (Doc. No. 11.) The undersigned has considered the pending motion and the corresponding response (Doc. No. 21). The Burnett Defendants' motion should be denied because the Plaintiffs have sufficiently stated a claim upon which relief can be granted, and a motion for summary judgment is the proper vehicle to prove the Plaintiffs state law claims are barred by the statute of limitations.

**I. Background**

*A. Procedural Background*

On March 7, 2008, twelve individuals who were allegedly trafficked into the United States filed a putative class action against the Defendants in the Eastern District of Louisiana. See David v. Signal Int'l, LLC, Civ. A. No. 08-1220 (E.D. La.). That Court denied class

certification;[1] and, as a result of this ruling, the Plaintiffs in the instant action filed suit in this District, where they were allegedly subjected to deplorable working conditions at a Signal's Orange, Texas and Pascagoula, Mississippi facilities. (Doc. No. 1.) On August 7, 2013, the Plaintiffs filed their complaint in this court against the Burnett Defendants, Signal International, L.L.C., Signal International, Inc., Signal International Texas, G.P., Signal International Texas, L.P. (hereinafter collectively referred to as "Signal"), Michael Pol, Global Resources, Inc., Sachin Dewan and Dewan Consultants Pvt. Ltd. (Id.) Subsequently, the Burnett Defendants filed the instant motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). (Doc. No. 11.)

B. *Factual Background*

In the aftermath of Hurricane Katrina, approximately 590 men, including the Plaintiffs, were allegedly trafficked into the United States through the federal government's H-2B guest worker program to provide labor and services to the Signal Defendants. (Doc. No. 1, p. 1.) The Plaintiffs claim they were lured to work for Signal through the fraudulent promise of legal and permanent work-based immigration to the United States for themselves and their families. (Id., p. 2.) Subsequently, after coming to the United States, the Plaintiffs were allegedly subjected to forced labor and other serious abuses at Signal operations in Orange, Texas and Pascagoula, Mississippi. (Id., p. 3.)

The Burnett Defendants consist of Malvern C. Burnett and his two corporations: Gulf Coast Immigration Law Center, L.L.C. and the Law Offices of Malvern C. Burnett, A.P.C. The Plaintiffs accuse Burnett of conspiring with Signal and other Defendants to recruit Indian welders and pipefitters to fill anticipated H-2B guest worker jobs at Signal's operations with

---

[1]. David v. Signal Int'l, LLC, Civ. A. No. 08-1220, 2012 U.S. Dist. LEXIS 114247, at *129 (E.D. La. Jan. 3, 2012).

false promises of permanent residency in the United States for the workers and their families. (Id.)

## II. Jurisdiction

The Plaintiffs seek recovery pursuant to several federal statutes. For actions brought under these statutory provisions, the court has subject-matter jurisdiction predicated upon federal question jurisdiction. See 28 U.S.C. § 1331; 29 U.S.C. § 216(b). For the state law causes of action, the court has subject-matter jurisdiction predicated upon supplemental jurisdiction. See 28 U.S.C. § 1367(a). Venue is proper because the events giving rise to the above claims occurred within the confines of this District. See 28 U.S.C. § 1391.

## III. Rule 12(b)(6) Standard

Rule 12(b)(6) of the Federal Rules of Civil Procedure authorizes dismissal of a complaint that fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). A Rule 12(b)(6) motion to dismiss "is viewed with disfavor and is rarely granted." Harrington v. State Farm Fire & Cas. Co., 563 F.3d 141, 147 (5th Cir. 2009). When a court analyzes a Rule 12(b)(6) motion, it "accepts 'all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff.'" In re Katrina Beaches Litig., 495 F.3d 191, 205 (5th Cir. 2007) (quoting Martin K. Eby Constr. Co. v. Dallas Area Rapid Transit, 369 F.3d 464, 467 (5th Cir. 2004)). A court should grant such a motion only when the complaint fails to contain "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id.

### IV. Analysis

The Plaintiffs allege Burnett violated the Trafficking Victims Protection Reauthorization Act ("TVPRA") and the Racketeer Influenced and Corrupt Organizations Act ("RICO"). (Doc. No. 1); see 18 U.S.C. §§ 1584-1595; §§ 1962(c) and 1962(d). The Plaintiffs have also asserted state law claims of fraud, negligent misrepresentation, and breach of contract against Burnett. (Id.) First, Burnett argues the Plaintiffs have failed to provide sufficient facts to state any claim. (Doc. No. 11.) Second, Burnett asserts the Plaintiffs' state law claims are barred by the statute of limitations. (Id.)

A. *Failure to State a Claim under Rule 12(b)(6)*

**1. Insufficient Facts**

Burnett generally argues the Plaintiffs failed to state more than mere conclusions and recitals of statutory language without any basis in fact in their complaint. In particular, Burnett argues that the Plaintiffs did not provide any facts showing Burnett engaged in illegal activity. In addition, Burnett argues that each of the Plaintiffs' federal claims "has as its linchpin" the false concept "that threats of deportation satisfy the definition of involuntary servitude." (Doc. No. 11, p. 2.)

First, the undersigned finds, contrary to Burnett's assertion, that the Plaintiffs have sufficiently alleged facts that allow the court to draw the reasonable inference that Burnett is liable for the alleged misconduct. In their complaint the Plaintiffs allege the following:

> At all relevant times, the Burnett Defendants acted as agents of Defendant Signal for the purpose of recruiting, obtaining, contracting with, transporting and/or providing Plaintiffs for labor or services in Signal's Orange, Texas, and Pascagoula, Mississippi, facilities. During this process, the Burnett Defendants induced Plaintiffs to enter into employment agreements by falsely promising to help them secure green cards. In actuality, the Defendants lacked the intent to diligently pursue the Plaintiffs'

green card applications. They also lacked any basis whatsoever for representing, inter alia, that 1) the companies and/or entities that purportedly were sponsoring Plaintiffs' applications were financially solvent and had reliable and stable employment opportunities to provide the Plaintiffs; 2) green card applications sponsored by those companies would be valid and *bona fide* under U.S. immigration law; and 3) any applications were likely to be successfully completed and approved within the promised timelines.

All of the Plaintiffs undertook considerable economic, social, familial, and personal sacrifices to obtain the funds necessary to cover the fees paid to all of the Defendants involved in the recruitment process, including Burnett. Since first contracting with the Defendants in India, the Plaintiffs have yet to receive the green cards that the Defendants promised them. Despite clear contractual provisions requiring them to do so, Burnett has refused to refund any of the Plaintiffs' money, which was paid to them for the express purpose of processing and obtaining green cards and visas for the Plaintiffs.

In late May and early June of 2006, the Burnett Defendants filed with the Texas Workforce Commission the completed forms ETA 750 and attachments seeking permission to import and hire 590 foreign guest workers under the auspices of 8 U.S.C. § 1101(a)(15)(H)(ii)(b), attendant regulations 8 C.F.R. § 214.2(h)(6) and 20 C.F.R. § 655.3 and associated administrative letters and/or guidance (commonly known as "the H-2B guest worker program") on behalf of Signal. Burnett knew Signal projected the labor need that it sought to fill with foreign workers to be for at least two to three years. However, in these applications, they only stated that they would employ the workers from October 1, 2006 to July 31, 2007. Furthermore, they stated that "the temporary workers will work for the length of the prescribed dates of need, will be paid in accordance with the prevailing wage and will return to their home country at the end of employment." The Plaintiffs entered the United States on H-2B guest worker visas, issued by the U.S. Government on the basis of false statements in late 2006 and early 2007 for the purposes of working for Defendant Signal at its Pascagoula, Mississippi, and Orange, Texas, facilities.

In sum, Defendants, individually and jointly, conspired and schemed to target Plaintiffs as Indian laborers, knowing that they would be enticed by good pay and false promises of permanent residency, to lure them into the United States. Furthermore, each Defendant, individually and through a collaborative enterprise premised upon fraud, mistreated Plaintiffs and deprived them of any benefit of a fair bargain.

In the RICO fraud chart attached to their complaint as Exhibit 1, the Plaintiffs also allege the following occurred after the Plaintiffs arrived in the United States:

> At periodic Signal camp meetings, Defendant Malvern C. Burnett told Plaintiff Mayavu and his co-workers repeatedly not to worry about their green cards. Defendant Burnett also represented that he was applying for H-2B visa extensions for Plaintiff Mayavu and for others. Subsequently, Plaintiff Mayavu and his co-workers inquired about extensions to their soon to expire H-2B visas. Defendant Signal and Defendant Burnett informed them that they were still on track to receive extensions, although they never received them.

The Plaintiffs have clearly alleged the Burnett Defendants were "key participants" in an "elaborate human trafficking scheme." (Doc. No. 21, p. 9.) In their motion to dismiss, the Burnett Defendants argue that these facts are merely "occurrences and actions that are consistent with any attorney representing his or her clients." (Doc. No. 11, p. 3.) However, the Plaintiffs have provided facts describing Burnett's acts that are entirely inconsistent with a "normal" attorney-client relationship. As stated above, Burnett allegedly made false promises to the Plaintiffs to lure them into working for Signal. Burnett also required the Plaintiffs to pay him exorbitant fees for his services, and then refused to refund the Plaintiffs' money when he failed to perform as promised. (Doc. No. 1, p. 24.)

Furthermore, the Plaintiffs have provided sufficient facts to support their argument that Burnett is liable for fraud and negligent misrepresentation. Under Federal Rule of Civil Procedure 9(b), "a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." As detailed above, Burnett made several promises to the Plaintiffs that he allegedly knew to be untrue: 1) the companies and/or entities that purportedly were sponsoring Plaintiffs' applications were financially solvent and had reliable and stable employment opportunities to

provide the Plaintiffs; 2) green card applications sponsored by those companies would be valid and *bona fide* under U.S. immigration law; and 3) any applications were likely to be successfully completed and approved within the promised timelines. (Doc. No. 1, p. 12.) In reliance on Burnett's promises, the Plaintiffs "relinquished stable employment opportunities in Singapore and India and borrowed substantial amounts of money" to work at Signal's Orange, Texas facility. (Id., p. 2.)

The Plaintiffs have also provided sufficient facts alleging that Burnett conspired with Signal. More than once, in their complaint and the RICO chart attached to the complaint as Exhibit 1, the Plaintiffs allege that the Burnett Defendants worked with the Recruiter Defendants and Signal to carry out this scheme. The Plaintiffs identify letters and phone conversations showing the Defendants conspired to: 1) recruit the Plaintiffs with false promises of permanent residency for themselves and their families; and 2) keep the Plaintiffs from protesting their mistreatment and leaving Signal's employ.

Finally, Burnett generally states the Plaintiffs failed to allege facts to support their breach of contract claim. (Doc. No. 11, p. 5.) However, the Plaintiffs allege they entered into contracts with Burnett under which they would pay fees to Burnett in exchange for his promise to provide them with lawful employment and work-authorized green cards enabling them to permanently and legally reside in the United States with their families. (Doc. No. 1.) Burnett allegedly breached this contract by not fulfilling those promises and refusing to refund the fees the Plaintiffs paid him. (Id., pp. 34-35.)

2. **Involuntary Servitude**

The Burnett Defendants also argue that "each of the federal causes of action has as its linchpin the concept that threats of deportation satisfies the definition of involuntary servitude,"

and "as a matter of law, the threat of deportation does not satisfy a determination of involuntary servitude." (Doc. No. 11, p. 2.) The Burnett Defendants do not elaborate on how each of the Plaintiffs' claims is based on the premise that threats of deportation satisfy the definition of involuntary servitude.

Nonetheless, the case cited by Burnett in support of his assertion is easily distinguished from the instant case. In *Zavala v. Wal Mart Stores*, the plaintiffs were "seeking compensation for unpaid overtime and certification of a collective action under the Fair Labor Standards Act (FLSA), civil damages under RICO, and damages for false imprisonment." Zavala v. Wal Mart Stores Inc., 691 F.3d 527, 530 (3d Cir. 2012). The plaintiffs supported their RICO and false imprisonment claims on the theory that the defendants forced them into working by threatening to report their immigration status to the authorities. Id. at 533. The Court stated that "absent some special circumstances, threats of deportation are insufficient to constitute involuntary servitude." Id. at 541. However, unlike the instant case, in *Zavala*, Wal-Mart did not contract directly with the plaintiffs; the plaintiffs did not work exclusively for Wal-Mart and "often switched jobs, freely moving to different employers in different cities;" and the plaintiffs were not housed in labor camps. Id. In fact, the *Zavala* court asserted that "[m]odern day examples of involuntary servitude have been limited to labor camps, isolated religious sects, or forced confinement." Id. at 540. In the instant case, the Plaintiffs allege they were housed in "overcrowded, unhygienic, and disease-ridden work camps resembling prisons" (Doc. No. 1, p. 3.) The "labor camps" were allegedly "located in an isolated industrial area miles removed from shopping, places of worship, public transportation or residential communities." (Id., p. 30.)

Furthermore, the Supreme Court held in *United States v. Kozminski* that "the

vulnerabilities of the victim are relevant in determining whether the physical or legal coercion or threats thereof could plausibly have compelled the victim to serve" involuntarily. United States v. Kozminski, 487 U.S. 931, 952 (1988). The Court further held that "a trial court could properly find that evidence of . . . extremely poor working conditions is relevant to corroborate disputed evidence regarding the use or threatened use of physical or legal coercion . . . ." Id. Therefore, a court must consider all of the relevant circumstances when determining whether the Plaintiffs were forced to serve involuntarily. In their complaint, the Plaintiffs allege the following:

> The camps were enclosed by fences and accessible to Plaintiffs only by a single, guarded entrance. The gates at the labor camp were constantly monitored by security guards who were retained by Signal. Upon information and belief, some or all of these guards may have been obtained by Signal through Swetman Security Service, Inc. ("Swetman Security"), a private security company based in Mississippi. Signal's security guards monitored Plaintiffs' arrival and departure from the facility by requiring them to show their employee identification badges and recording the times at which Plaintiffs entered and exited the camps. If an employee lost his identification badge, he was not allowed to leave the camp. Signal's security guards also searched Plaintiffs' packages and bags when they entered the camps. Except on certain rare occasions, Plaintiffs were not permitted to receive visitors in the labor camps at any time.
> Up to 24 men were housed in *each* bunkhouse and made to sleep in two-tiered bunk beds. The bunk beds were so tightly packed in the bunkhouses that it was difficult for workers to move about in the narrow passageways between the bunks. The bunkhouses also had insufficient toilet and bathing facilities for 24 men, resulting in very long lines for the bathrooms before and after work shifts. Privacy in the bunks was non-existent. Plaintiffs often experienced extreme difficulty with sleeping due to the constant noise that resulted from workers entering and leaving the bunks at different times for different work shifts throughout the day and night.
> Plaintiffs took their meals in Defendant Signal's mess halls, which were only open during limited hours. Due to unhygienic kitchen conditions, Plaintiffs' coworkers frequently became ill, sometimes requiring hospitalization. Plaintiffs routinely went

> without dietary necessities such as daily servings of fruits and vegetables, as a result of scarce resources in the kitchen.
> Plaintiffs also were exposed to a work environment in which they were forced to endure a lack of safety precautions, unfavorable job assignments, evaluation processes, and other adverse employment actions to which non-Indian and U.S. citizen workers were not similarly subjected.
> In the isolated and guarded atmosphere of the labor camps, grappling with the crushing debts they had incurred to come to the United States, and fearful of the perceived dangers that existed outside of their fenced-in housing site, Plaintiffs reasonably felt that Signal's statements were threatening and felt forced to live in the bunkhouses and continue working for Signal, despite terrible living and working conditions.

In light of these allegations, the undersigned finds the Plaintiffs have stated a plausible claim of involuntary servitude. Accordingly, the undersigned recommends that the court deny the Burnet Defendants' motion to dismiss on the basis that the Plaintiffs failed to state a plausible claim.

    B.   *Statute of Limitations*

The Burnett Defendants also assert that the Plaintiffs' pendent state law claims are time barred by the statute of limitations. Burnett argues the statute of limitations on the state law claims began to run, at the latest, when the *David* case was filed on March 7, 2008. Burnett submits that because the plaintiffs were putative class members in *David*, they were "necessarily aware of all the facts" that would trigger the running of the statute of limitations. (Doc. No. 11, p. 7.) Although Burnett does not catalogue the statute of limitations for each pendent state law claim under Texas law, he claims they would expire, at the latest, in four years—2012. The complaint in the instant case was filed in 2013. Burnett also argues the federal class action filed in the *David* court, which was not certified, did not toll the running of the statute of limitations on the state law claims. In response, the Plaintiffs argue the *David* Court explicitly tolled the statute of limitations on all of the Plaintiffs' state law claims. (Doc. No. 21, p. 18.) In the

alternative, they argue Texas law supports the tolling of the statute of limitations as to all purported members of a class upon the filing of the class action. (Id., p. 13.)

The *David* complaint was filed on March 7, 2008. (Doc. No. 11, Exh. 2.) United States District Judge Zainey, *upon the consent of Signal and the Burnett Defendants*, entered an order tolling the statute of limitations for the absent class members' (who are the Plaintiffs in this case) state law claims for 120 days until after the court's final ruling on class certification. Order, Kurian David et al. v. Signal International, L.L.C., et al., No. 2:08-cv-1220 (E.D. La. Jan. 20, 2011) (Doc. No. 982). Judge Zainey entered an order denying class certification on January 4, 2012, making the expiration of the tolling period May 3, 2012. Order and Reasons, *David*, No. 2:08-cv-1220 (Doc. No. 1117). The case was subsequently transferred to United States District Judge Susie Morgan. Order Reassigning Case, David, No. 2:08-cv-1220 (Doc. No. 1157). Over Signal's objection, Judge Morgan further tolled the statute of limitations for the Plaintiffs' claims until August 28, 2013. Order and Reasons, David, No. 2:08-cv-1220 (Doc. No. 1379). However, pursuant to Burnett's request, Judge Morgan clarified that prior order by stating it only tolled the limitations period for the *federal* law claims, not any state law claims. Order and Reasons, David, No. 2:08-cv-1220 (Doc. No. 1417).

For a Rule 12(b)(6) motion, a court is typically not to look beyond the complaint. However, a court may consider attachments to briefing regarding a motion to dismiss if the documents are referenced in the complaint, central to the complaint, referenced by the parties, and their authenticity is not in dispute. See Walch v. Adjutant Gen. Dep't, 533 F.3d 289, 293–94 (5th Cir. 2008) (citing *In re* Katrina Canal Breaches Litig., 495 F.3d 191, 205 (5th Cir. 2007)); Causey v. Sewell Cadillac-Chevrolet, Inc., 394 F.3d 285, 288 (5th Cir. 2004). Those are the only documents the undersigned should consider in deciding the motion to dismiss as it

concerns the limitations issue—not the various court orders entered by the New Orleans district courts tolling state statutes of limitations for the pendent state law claims.[2]

Nevertheless, even if the undersigned were to consider and apply Judge Zainey's tolling order from the date the *David* complaint was filed until its expiration, the undersigned would still need to go outside the pleadings to intelligently determine the appropriate accrual date for the various state law claims and what effect the tolling period from Judge Zainey's order has on the timeliness of the pendent state law claims filed in the instant complaint.[3] Pursuant to Federal Rule of Civil Procedure 12(d), "if on a motion under Rule 12(b)(6) matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56, and all parties must be given a reasonable opportunity to present material that is pertinent to the motion." Accordingly, to the extent the Burnett Defendants believe the Plaintiffs' state law claims are still barred by the statute of limitations in light of Judge Zainey's tolling order, that is a matter best addressed in a motion for summary judgment, after the parties have had an opportunity for full discovery and the court can consider evidence outside the pleadings.

## V. Recommendation

For the reasons stated above, the Burnett Defendants' "Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6)" (Doc. No. 11) should be denied, subject to reconsideration in a motion

---

2. Burnett did not address the tolling orders entered by the *David* court, and the Plaintiffs only mentioned Judge Morgan's initial order tolling the statute of limitations for the state law claims, not the order clarifying that the previous order only applied to the federal law claims. It should be noted that Burnett filed the instant motion after Judge Zainey's and Judge Morgan's tolling orders, but before Judge Morgan's order clarifying the previous order was entered on October 14, 2013. However, the Plaintiffs filed their response on November 15, 2013, after the clarification order was entered.

3. Burnett cites Bell v. Showa Denko K.K., 899 S.W.2d 749 (Tex. App. 1995) in support of his argument that Texas courts hold the filing of a proposed federal class action does not toll the limitations period on pendent state law claims. See also Newby v. Enron Corp., 542 F.3d 463 (5th Cir. 2008). In those cases, it does not appear the Defendants consented to the tolling of the statute of limitations, as the Burnett Defendants did here, at least for the period of time reflected in Judge Zainey's order. As such, those cases appear to be inapposite.

for summary judgment that the state law claims are barred by the statute of limitations.

## VI. Objections

Pursuant to 28 U.S.C. § 636(b)(1)(c) (Supp. IV 2011), each party to this action has the right to file objections to this report and recommendation. Objections to this report must (1) be in writing, (2) specifically identify those findings or recommendations to which the party objects, and (3) be served and filed within fourteen (14) days after being served with a copy of this report. See 28 U.S.C. § 636(b)(1)(c); Fed R. Civ. P. 72(b)(2). A party who objects to this report is entitled to a *de novo* determination by the United States District Judge of those proposed findings and recommendations to which a specific objection is timely made. See 28 U.S.C. § 636(b)(1)(c); Fed R. Civ. P. 72(b)(3).

A party's failure to file specific, written objections to the proposed findings of fact and conclusions of law contained in this report, within fourteen (14) days of being served with a copy of this report, bars that party from: (1) entitlement to *de novo* review by the United States District Judge of the findings of fact and conclusions of law, see Rodriguez v. Bowen, 857 F.2d 275, 276–77 (5th Cir. 1988), and (2) appellate review, except on grounds of plain error, of any such findings of fact and conclusions of law accepted by the United States District Judge, see Douglass v. United Servs. Auto. Ass'n, 79 F.3d 1415, 1428–29 (5th Cir. 1996).

SIGNED this 31st day of July, 2014.

_____
Zack Hawthorn
United States Magistrate Judge